UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| REGINA KANATZER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:09CV74 CDP |
| | ) |
| DOLGENCORP, INC., et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

Plaintiff Regina Kanatzer seeks to recover unpaid overtime under the Fair Labor Standards Act. Defendants Dolgencorp Inc. and Dolgencorp LLC have moved for summary judgment on their affirmative defense that Kanatzer is exempt from the FLSA as an executive employee. Dolgencorp also seeks to exclude the testimony of Kanatzer's damages expert Edward Sauls. For the reasons stated below, I find that genuine issues of material fact remain, and so I will deny the motion for summary judgment. I also find that Kanatzer's expert's opinion is sufficiently reliable to be admissible.

## Facts

Kanatzer is the manager of a Dollar General Store in Moberly, Missouri owned by Dolgencorp. Kanatzer began working for Dollar General as a store clerk in 1984. Within four years she earned promotions to assistant manager, then

to store manager. She has served as a store manager for more than twenty years, with brief periods as a "certified" store manager and temporarily as a district manager.

Kanatzer's store is part of a nationwide chain of Dollar General stores. Decisions regarding the management of Kanatzer's store in Moberly are divided among different levels of the company. Some decisions are made in the corporate office, some are made by regional and district managers, and some are made by Kanatzer herself.

The corporate office issues standard operating procedures, which dictate what products to sell, the layout of the store, where the products are placed in the store, the height of the shelves, the quantity of each product to order, the temperature of the store, the hours of operation, the number of hours that each class of employee may work, the specific hours of the day in which each class of employee may work, which products may be marked down, and the topics and procedures for weekly staff and safety training. Most of these decisions, such as which products to stock, product placement, and store layout, cannot be modified by a store manager, although Kanatzer may make some adjustments to the weekly work schedules of the employees at her store.

Regional and district managers also direct some of the activities at Kanatzer's store. Kanatzer reports to a district manager who supervises

approximately fifteen stores. The district manager generally visits Kanatzer's store only once a month for a few hours at a time, but monitors Kanatzer's store to varying degrees for the remainder of the month. The extent and frequency of the district manager's ability to remotely monitor Kanatzer's store is unclear from the record and the details of that monitoring are disputed. It is undisputed that the district manager is in frequent contact with Kanatzer through email and telephone contact. The district manager remotely monitors Kanatzer's store through automated systems, transaction data, markdown reports, and alarm access.

Kanatzer has some authority with regard to store employees. Kanatzer may make recommendations regarding the hiring of lead clerks, key clerks, and assistant managers, but the district manager makes the ultimate decision to hire for each of these positions. The district manager handles issues of employee discipline, such as suspensions and terminations, and does not consult Kanatzer before firing or disciplining the clerks in her store. If an employee is not performing his duties or engages in misconduct, Kanatzer may attempt to correct the problem, but if the misconduct is serious (e.g., involving more than $50), Kanatzer must report it to the district manager, who then takes responsibility for the situation. The district manager determines the weekly payroll budget for Kanatzer's store and does not tell Kanatzer the actual payroll budget. Kantazer hires lower-level clerks, subject to cursory oversight, and schedules the work

hours of the store employees, although she does so within the guidelines of a scheduled template that dictates what hours of the day managers, assistant managers, and clerks may be scheduled. The template, for instance, does not allow Kanatzer to schedule anyone other than herself to work for the first hour that the store is open.

Kanatzer also performs a substantial amount of manual labor and performs other duties that are consistent with the duties of a store clerk. According to Kanatzer, she spends nearly all of her time – up to 90% of her time – on these manual duties, and only a short period of time each day on her managerial duties. During the day she is either alone in the store, at which time she must tend the cash register, or there is only one other employee, at which time she must unload merchandise, clean the store, and tend the sales floor.

Kanatzer currently works fifty-five hours per week. She previously worked fifty hours per week until 2005. Her salary is $768 per week and she is the only employee at the Moberly store that receives bonuses based on the performance of the store. Her assistant manager makes $9.00 per hour and has worked for Dollar General for approximately one year.

**<u>Analysis</u>**

Summary judgment is appropriate if "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party "always bears the initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All inferences must be considered in the light most favorable to the non-moving party. *Beard v. Banks*, 548 U.S. 521, 529-30 (2006). On a motion for summary judgment, the court will not weigh the evidence and decide the truth of the matter, but rather will only determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Dolgencorp argues that Kanatzer is exempt from the FLSA's overtime provisions because she is an executive employee. Generally, the FLSA demands that all employees be compensated at an increased rate for all overtime hours. 29 U.S.C. § 207 (West 2010); *Auer v. Robbins*, 65 F.3d 702, 709-10 (8th Cir. 1995). However, the FLSA provides an exemption from this rule for bona fide executive employees. 29 U.S.C. § 213(a)(1) (West 2010). "[T]he application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof." *Hertz v. Woodbury County, Iowa*, 566 F.3d 775, 783 (8th Cir. 2009) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974)) (internal quotations omitted). For the reasons stated below, I find that there is a genuine issue of material fact regarding Kanatzer's duties, hours, and status as a manager.

An employee is not automatically an exempt executive merely because she is labeled a "manager" or because she is "in charge" of a particular store. *See* 29 C.F.R. § 541.2; *Ale v. Tennessee Valley Authority*, 269 F.3d 680, 691 (6th Cir. 2001) ("The words 'in charge' are not a magical incantation that render an employee a bona fide executive regardless of [her] actual duties."). Instead, the Department of Labor has outlined several factors that a court must consider in order to determine whether an employee is exempt from the FLSA's overtime provisions. *See* 29 C.F.R. § 541.100. Dolgencorp argues that Kanatzer satisfies all of these factors. Kanatzer only disputes one of these factors – the primary duty factor – therefore I need not address the others.

In order to be exempt, an employee's primary duty "must be the performance of exempt work." 29 C.F.R. § 541.700(a). "The amount of time spent performing exempt work can be a useful guide in determining . . . the primary duty of an employee." 29 C.F.R. § 541.700(b). "[E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement" and will be exempt from the FLSA's protections.[1]

---

[1]Kanatzer asserts that she spent only ten percent of her time on exempt duties, while Dolgencorp says the percentage should be between thirty-six and forty percent. Both parties support their estimates by piecing together statements regarding how much time she spent performing specific tasks, such as making schedules or supervising the work of her store clerks. The record provides support for both interpretations, but in either case Kanatzer does not spend more than fifty percent of her time on exempt duties, so she is not presumptively an exempt employee under 29 C.F.R. § 541.700(b).

*Id.* The amount of time an employee spends on exempt duties is a question of fact. *See Spinden v. GS Roofing Products Co., Inc.*, 94 F.3d 421, 426 (8th Cir. 1996).

If an employee is not presumptively exempt by spending more than fifty percent of her time on exempt duties, the employee "may nonetheless meet the primary duty requirement if the other factors support such a conclusion." *Id.*

> Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. 541.700(a).[2] Although courts must consider each element, an employee's primary duty is ultimately determined by considering "the character of the employee's job as a whole" with reference to all of the factors of the inquiry. 29 C.F.R. § 541.700(a). For the reasons stated below, I find that issues of material fact remain regarding the extent of Kanatzer's exempt duties, the amount of discretion Kanatzer had in these duties, the amount of supervision Kanatzer was

---

[2]The DOL amended this regulation in 2004 by eliminating one factor from the primary duty test – a consideration of how frequently the employee exercises discretionary authority. *See* 29 C.F.R. § 541.103 (2003). Where, as here, the claim period spans the change in regulation, it is appropriate to apply the amended regulations to the actions occurring after the amendment took effect, while applying the un-amended regulation to the actions occurring before the amendment. *See Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 629 (6th Cir. 2009). I will therefore consider this factor.

subject to in these duties, and whether Kanatzer's exempt duties are responsible for her salary.[3]

The first factor – the relative importance of an employee's exempt and non-exempt duties – is determined by comparing how valuable the employee's exempt activities are to the employer versus how valuable the employee's non-exempt activities are to the employer. *See Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 505-6 (6th Cir. 2007). Kanatzer argues that her manual labor and other non-exempt work is more important to Dolgencorp because that is how she spends most of her time. Dolgencorp argues that Kanatzer's exempt managerial duties are more important to the corporation than her other duties. I conclude that genuine disputes of material fact remain with regard to application of this factor.

Most of Kanatzer's time is spent on non-exempt work similar to the standard work of a store clerk. She works the cash register, she cleans the store and the bathrooms, and she unloads shipments of merchandise, among other similar duties. Although the parties dispute many of Kanatzer's allegedly managerial duties,[4] it is undisputed that Kanatzer is involved in hiring, training,

---

[3]Each side has provided summary judgment decisions from other districts in other Dollar General cases. Not surprisingly, some courts have granted summary judgment and some have denied it. The decision requires an individualized inquiry, and while the cases provided are somewhat helpful, none is determinative for Kanatzer's case.

[4] The regulations describe two types of exempt managerial work – first, supervising subordinate employees and, second, directing the business practices of the enterprise. *See* 29 C.F.R. § 541.102 (West 2010). The parties dispute the extent of Kanatzer's duties that fall under

assigning work to, and supervising the work of the other employees at her store – all managerial activities. The job description for her position highlights these activities over her clerical duties. Kanatzer's performance review is also almost entirely dedicated to a review of her success in carrying out these exempt duties, rather than her clerical duties. Based on these facts, a fact-finder could conclude that Dolgencorp is more interested in seeing that Kanatzer completes her exempt duties than her clerical duties. The record, however, has evidence tending to go both ways, so I conclude that this factor remains disputed.

The next stage of the inquiry involves the amount of time that Kanatzer spends on exempt work and the frequency with which she exercises discretion. *See* 29 C.F.R. § 541.700(a) (2010); 29 C.F.R. § 541.103 (2003). The Department of Labor Regulations provide a list of typically managerial activities. *See* 29 C.F.R. § 541.102. These activities are :

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold;

---

the first type of exempt work. The record is fairly clear that Kanatzer does not perform duties consistent with the second type.

controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

Despite the job description that Dolgencorp provided, the record shows that Kanatzer does not, in fact, perform many of these activities, such as directing what products to stock, the flow of merchandise, safeguarding the property, or controlling the budget. She also does not decide where to place merchandise in the store or the layout and temperature of the store. Although Kanatzer does perform some of the listed activities, her discretion in these activities is substantially limited by company policies and the oversight of her supervisors. The regulations state that even traditionally exempt activities should not be considered in this analysis if the employee's discretion in performing those activities is so limited that it reduces the task to "simply apply[ing] well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response to an inquiry or set of circumstances." 29 C.F.R. § 541.704.

Kanatzer supervises the work of the other employees at the store, but she cannot suspend or fire them. She can instruct them on how to interact with customers, but she cannot discipline them. If employees have problems about

their employment or disputes with other employees, they are encouraged to call a corporate hotline, not to address the issue with Kanatzer. Kanatzer schedules employee work shifts, but she must do so within the guidelines of a detailed planner and without any actual knowledge of the week's payroll budget. Kanatzer may amend this planner to a certain extent, but she does not have enough discretion to schedule another clerk to work with her for the first hour of the day and she cannot send store clerks home early or close the store early. Kanatzer administers safety training to her employees, but the time, topic, and procedure are dictated by corporate memo. She trains the clerks when they are initially hired, but much of their later training occurs via a regularly scheduled computer training program that is created, administered, and monitored at the corporate office. She can assign tasks to the other employees at the store, but many of the tasks she assigns are dictated by the corporate office or the district manager, and if the employees do not complete the tasks, Kanatzer must complete them herself. The second factor, therefore, remains disputed.

Similarly, Dolgencorp has not shown that the third element of the inquiry – the extent that Kanatzer was subject to direct supervision – indicates that she is exempt from the FLSA. *See* 29 C.F.R. § 541.700(a). Kanatzer testified that, despite her district manager's infrequent visits, her own discretion is limited by her district manager's remote monitoring of the store's activities. The district

manager may call and email her multiple times a day while remotely monitoring the store's register transactions and alarm logins. The district manager reviews store data frequently enough to call or email Kanatzer when there is a single unusual transaction. The district manager remotely reviews the store's computer records and will contact Kanatzer if she, or any the other store employees, do not read daily emails or complete scheduled training programs.[5]

While Dolgencorp argues that Kanatzer is "almost completely autonomous on a daily basis"[6] it nevertheless concedes that the record does not resolve the question of how frequently the district manager remotely monitors Kanatzer's activities or what the monitoring entails, and does not identify whether this supervision is related to Kanatzer's exempt or non-exempt duties. As a result, the extent of Dolgencorp's supervision of Kanatzer remains in dispute.

Dolgencorp also has not shown that the final factor of this inquiry is free from dispute. This element regards the relationship between the employee's salary

---

[5]Dolgencorp's primary legal argument is that, regardless of the amount of the district manager's supervision, it is still possible that Kanatzer was sufficiently free from direct supervision to find her exempt, and cites *Murray v. Stuckey's*, 939 F.2d 614, 619 (8th Cir. 1991). It is true that, in considering an employee's job as a whole, a court may still find that an employee who is subject to heavy supervision is exempt. *Id.* However, this does not prove, as Dolgencorp implies, that Kanatzer was not subject to direct supervision in this case.

[6] Dolgencorp uses Kanatzer's freedom to hire employees and the fact that she has "*never been required to retain any employee she did not want*" as evidence that she was relatively free from direct supervision. Def. Reply Brief at 7 (italics in original). However, the record is clear that Kanatzer cannot fire the employees at her store and is not consulted before the district manager terminates an employee at her store.

and the wages paid to other employees for the type of nonexempt work performed by the supervisor. 29 C.F.R. § 541.700(a). Dolgencorp argues that Kanatzer's salary is approximately fifty percent higher than her assistant manager's and that this disparity is due to her status as a manager.[7] Kanatzer argues that the disparity between her salary and her assistant's is due to her greater years of service to Dollar General. Kanatzer has nearly twenty-five years more experience with Dollar General than her assistant managers. Dolgencorp has not explained why this disparity in experience does not justify her higher salary by, for instance, showing that assistant managers do not receive periodic raises or that periodic raises could not account for this pay disparity. Instead, Dolgencorp simply argues that Kanatzer has always made more than her assistants. This, however, does not rebut Kanatzer's argument unless at some point Kanatzer and her assistant had similar years of experience – a fact that Dolgencorp fails to assert. Therefore, a genuine issue remains regarding whether Kanatzer's salary is merely based on her years of service or whether it is based on the fact that she performs exempt duties.

Viewing Kanatzer's job as a whole, Dolgencorp has not shown that

---

[7] Kanatzer argues that, before making this comparison, her salary should be converted to an hourly wage based on the number of hours she actually worked. Dolgencorp argues that her weekly salary should be compared to the average weekly salary for the assistant managers at her store. The regulations do not provide guidance on this issue, however, the Sixth and Eleventh Circuits apply the method recommended by Kanatzer. *See Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 508-09 (6th Cir. 2007); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1257-58 (11th Cir. 2008). However, because there is a factual dispute regarding the cause of her higher earnings, I need not resolve this issue at this time.

Kanatzer is exempt. Kanatzer performs only a few of the duties that the regulations identify as exempt work and her discretion in those few activities is substantially limited by corporate procedures and by the oversight of her district managers. The parties also dispute the extent that Kanatzer was directly supervised and the basis for her salary. As a result, I cannot say that Dolgencorp is entitled to summary judgment on its defense that Kanatzer is an executive employee at this stage.

## Expert Testimony

Dolgencorp seeks to exclude the testimony of Kanatzer's expert witness Edward Sauls. Sauls is an accountant with several decades of experience. In his report, Sauls calculated Kanatzer's overtime using the formula described in section 29 C.F.R. § 778.113, which provides the general method for calculating overtime pay for non-exempt salaried employees. *See* 29 C.F.R. § 778.113. Dolgencorp does not claim that Sauls' math is in error, but instead claims that he did not use the correct formula to determine the amount of Kanatzer's overtime pay. Dolgencorp also claims that Sauls based his calculations on an incorrect estimate of Kanatzer's weekly hours. For the reasons stated below, I find that Dolgencorp has not shown that Sauls incorrectly calculated Kanatzer's overtime.

Dolgencorp argues that Sauls should have applied the fluctuating work week method described in § 778.114, instead of the regular method, to determine

how much overtime pay Kanatzer should have earned. The fluctuating workweek calculation is appropriate only in certain circumstances. *See* 29 C.F.R. § 778.114. To apply § 778.114:

> 1) the employee's hours must fluctuate from week to week; 2) the employee must receive a fixed weekly salary that remains the same regardless of the number of hours that the employee works during the week; 3) the fixed amount must be sufficient to provide compensation at a regular rate not less than the legal minimum wage; 4) the employer and the employee must have a clear, mutual understanding that the employer will pay the employee the fixed weekly salary regardless of the hours worked; and 5) the employee must receive a fifty percent overtime premium in addition to the fixed weekly salary for all hours that the employee works in excess of forty during that week.

*Flood v. New Hanover County*, 125 F.3d 249, 252 (4th Cir. 1997) (citations omitted); 29 C.F.R. § 778.114. Since at least three of the five elements of this test are lacking in this case, I do not find that Sauls' report is unreliable for not applying the fluctuating workweek method to determine Kanatzer's overtime.

First, in order for the fluctuating workweek method to apply, the employee's weekly schedule must fluctuate. 29 C.F.R. § 778.114(a). The term "fluctuating workweek" is a technical term that refers to a schedule where the employee is paid a fixed weekly salary, even though the employee will actually work alternating weeks of fewer or greater weekly hours than an agreed upon average. 29 C.F.R. § 778.114; *Heder v. City of Two Rivers, Wisconsin*, 295 F.3d 777, 780 (7th Cir. 2002). This fluctuating schedule need not be unpredictable, but it must fluctuate

from week to week. 29 C.F.R. § 778.114; *Flood*, 125 F.3d at 253. There is no evidence that Kanatzer's hours fluctuated from week to week. Kanatzer testified that she initially agreed to work forty-five hours per week, then spent several years consistently working the same number of hours per week. Kanatzer states that she worked fifty hours per week consistently for several years, then worked fifty-five hours per week from 2005 onward. This fluctuation took place over the course of years, not from week to week as required by the regulation. Dolgencorp has not identified any other evidence that Kanatzer's hours fluctuated.

Second, Dolgencorp has also not shown that it had a "clear mutual understanding" with Kanatzer that the fluctuating workweek method would apply to determine her overtime pay. The fluctuating workweek applies only if there is "a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek." 29 C.F.R. § 778.114(a) (parenthesis in original). A clear mutual understanding may be shown, for example, by proving that the employer held a meeting where it explained the method to its employees, or that the employees were provided examples of how their overtime would be calculated under the method, or that the employer paid the employee according to the method for a certain period of time. *See e.g.*, *Samson v. Apollo Resources, Inc.*, 242 F.3d 629 (5th Cir. 2001); *Flood*, 125 F.3d at 251, 253; *Mayhew v. Wells*, 125 F.3d 216, 219 (4th Cir. 1997); *Condo*

*v. Sysco Corp.*, 1 F.3d 599, 602 (7th Cir. 1993). Dolgencorp continues to assert that Kanatzer is not entitled to any overtime, whether it is calculated under the fluctuating workweek or otherwise. It has not paid Kanatzer any overtime since it classified her as a manger, and does not claim that it ever discussed the fluctuating workweek with her. Under these circumstances there is no reason to believe that the parties shared a mutual understanding that the fluctuating workweek method would apply or that Kanatzer could have inferred its application through Dolgencorp's actions.

Third, Dolgencorp admits that it cannot show that it actually paid Kanatzer overtime according to the fluctuating workweek method. In order for the method to apply, the employer must actually pay the employee overtime according to the fluctuating workweek method. 29 C.F.R. § 778.114; *Marshall v. Hamburg Shirt Corp.*, 577 F.2d 444, 447 (8th Cir. 1978). Dolgencorp admits that it never paid Kanatzer any overtime after classifying her as an exempt employee and continues to argue that Kanatzer is not entitled to any overtime. For these reasons, Sauls' calculations are not unreliable for failing to apply the fluctuating work week method.

Similarly, Dolgencorp's argument that Sauls erred by calculating Kanatzer's regular rate by assuming a forty-five hour workweek is not persuasive. Under the general method described in § 778.113, overtime is calculated by dividing an

employee's salary by the number of hours she is expected to work. Kanatzer testified that she and Dolgencorp agreed that her salary was based on a forty-five hour per week schedule. This agreement is a sufficient factual basis for Sauls' assumption that Kanatzer was intended to work forty-five hours per week.

Finally, Dolgencorp challenges Sauls' calculation of prejudgment interest. Whether to award liquidated damages or prejudgment interest is a question for the court, not the jury. *See* 29 U.S.C. § 260; *Wahby v. Dave Sinclair Ford*, 4:92CV 000241 SNL, 1992 WL 402899, at *1 (E.D. Mo. 1992) ("The language of 29 U.S.C. § 260 provides: '[T]he court may, in its sound discretion, award no liquidated damages or award any amount thereof . . .'") (citing *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir.1971)); *Johnston v. Metropolitan Life Ins. Co.*, No. 4:94CV1127 LOD, 1995 WL 860757, at *2 (E.D. Mo . Mar. 23, 1995). Thus, Sauls will not be allowed to testify before the jury about prejudgment interest. His testimony, however, might be helpful for the court, so I will simply deny the motion as it relates to the prejudgment interest calculations.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [#26] is DENIED.

**IT IS FURTHER ORDERED** that defendants' motion to exclude the testimony of plaintiff's expert [#24] is DENIED.

Because this case was consolidated with others before me for pretrial purposes only, and the pretrial proceedings have now been concluded, **IT IS FURTHER ORDERED** that the Clerk of Court shall transfer this case back to the judge before whom it was pending before the consolidation for pretrial purposes, The Honorable E. Richard Webber, for trial and all further proceedings. All future filings must use case number 4:09CV74 ERW.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 8th day of July, 2010.